### MIGNANO et al. v. MacANDREWS et al.

### CALIFANO et al. v. SAME.

(Circuit Court of Appeals, Second Circuit. February 7, 1893.)

SHIPPING — CHARTER PARTY — REPORT TO CUSTOMHOUSE — RIGHT TO INWARD
BUSINESS.

    A clause of a charter party providing that the vessel is to be "reported at the customhouse" by the charterers' agents or their appointees, is not equivalent to a consignment to them, and does not give them the right to do the inward business of the ship. 49 Fed. Rep. 376, affirmed.

Appeals from the District Court of the United States for the Southern District of New York.

In Admiralty. Libels in personam by Andrea Mignano and another against Robert MacAndrews and another, composing the firm of Robt. MacAndrews & Co., and by Gaspare Califano and another against the same, to recover a balance of charter hire of two vessels. Decrees were rendered for libelants. 49 Fed. Rep. 376. Subsequently, on application by libelants, money deposited on tender was paid to them. 51 Fed. Rep. 300. Respondents appeal from decrees. Affirmed.

Mr. Adams, for appellants.
Harrington Putnam, for appellees.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. These are appeals by respondents from decrees of the district court for the southern district of New York, entered February 4, 1892, in favor of the libelants for the full amount of their respective claims. Two Italian vessels—the Teresina Mignano and the Francesco R.—were chartered by respondents under their firm name of Robt. MacAndrews & Co. to bring each a cargo of licorice from Smyrna to New York. The form of charter party was one prepared by respondents, and in use by them about 15 or 16 years. It contained the following clause:

"The vessel is to be reported at the customhouse, New York, by Messrs. MacAndrews and Forbes, 55 Water street, charterers' agents, or by whom they may appoint, or pay £20, and which sum is hereby agreed upon, not as a penalty, but as liquidated damages."

Upon arrival in each case the captain received written notification from respondents, requiring him to "deliver his papers to Mr. John C. Seager, who will enter the vessel in the customhouse for our account," etc. Before complying with this request, the captain communicated with Seager, informing him that for such service he would "only pay the regular custom brokerage of $3." In reply Seager stated that his charge for "doing sailing vessels' inward business is the usual five cents per register tonnage;" insisted that the ship was "consigned to Messrs. MacAndrews & Forbes, whose representative he was;" and notified the captain that "if he refused to follow out their instructions they would collect fine as per charter party." The master thereupon in writing and personally tendered three dollars, with the ship's papers, to Seager, who declined the offer, and refused to enter the ship, unless he were given her inward business. Thereupon the master caused the vessel to be entered in the customhouse in respondents' names by another broker, paying three dollars therefor, which was in fact the regular fee for such service. The inward business was attended to by Funch, Edye & Co. Respondents deducted £20 in each case from the amount of freight they tendered, claiming the right to do so as liquidated damages for breach of contract. The tender was refused, and actions brought for full amount of the freight in each case, with the result above indicated.

The entire dispute in the case arises upon the interpretation of the above-quoted clause in the charter party,—appellants insisting that it is equivalent to a consignment of the ship to respondents; the appellees insisting that it means simply what it says, and no more. Certainly there is no ambiguity on the face of the paper. The Revised Statutes provide that within 24 hours after arrival the master of a vessel from any foreign port shall report the arrival of the vessel, "and he shall, within 48 hours after such arrival, make a further report in writing to the collector of the district, which report shall be in the form and shall contain all the particulars required to be inserted in and verified like a manifest." Rev. St. U. S. § 2774. It is difficult to see how words more apt for expressing the discharge of this particular function could have been selected than those used in the charter party,—"vessel to be reported at the customhouse." Being a document prepared by the charterers, and the clause being manifestly inserted for their benefit, ambiguities, if any there were in its phrasing, should be resolved against them. Any suggestion that the phrase "vessel to be reported at the customhouse," etc., was, in the mind of the draughtsman, the equivalent of the phrase, "vessel is consigned to," etc., is shown to be clearly untenable upon inspection of the document itself. When chartered, the vessels were lying one at Casfellamare, one at Naples, and were to proceed thence to Smyrna to receive cargo. For their disposition at that port the charter provides: "Vessel to be consigned to charterers' agents at her port of loading." Had it been the intention to consign her to charterers' agents at port of discharge, the inference is irresistible that similar language would have been used.

Very clear and positive evidence of controlling custom, or of practical construction by the parties, or of failure by them to express their true intent in the document they signed would be required to convince that a written instrument so plainly expressed is really ambiguous, and to resolve that ambiguity in favor of the party who prepared it. We do not find sufficient evidence in this case to warrant such a conclusion. The fact that with the assent of charterers' agents, or at their request, Funch, Edye & Co. had on former occasions acted as consignees of ships under similar charters, attending both to their reporting at the customhouse and to their inward business, is not sufficient to establish a practical construction of the clause such as appellant contends for. The assent of charterers' agents was necessary to the selection of that firm as agents to report, and it does not appear that their selection on these occasions as agents for the inward business was not as much the act of the ship owner or his representative, the master, as it was of the charterers or their agents. The circumstance that, as soon as the charterers' agents selected some one else to do the reporting, the master insisted on putting his ship in the hands of Funch, Edye & Co., certainly warrants the inference that the selection of a consignee of the ship on former occasions had not been abandoned by the owner, and that said firm had acted before in that capacity, not because the ship owner assented to the strained construction of the clause which appellants seek to establish, but because he himself selected the consignee, either personally or through the master.

The new evidence taken on appeal shows only that when, in former charters, the representative of the owner had inserted a clause, "and to Guinio Erminto's agents for ship's assistance," etc., the charterers were solicitous that it should be distinctly understood not to supersede the "printed clause as to ship being reported inwards by [their] own firm or [their] agents." If the clause really meant more than it says, it would seem natural that the charterers would have expressed solicitude for the preservation of all the rights they claimed it secured to them.

The decree of the district court is affirmed, with costs.